2017 IL App (1st) 151536
No. 1-15-1536
Opinion filed September 21, 2017

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14 CR 11414 |
| JESSE COX, | ) ) | The Honorable Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1        After a jury trial, defendant Jesse Cox was convicted of aggravated unlawful use of a weapon, based on his failure to possess a Firearm Owner's Identification (FOID) card. After considering factors in mitigation and aggravation, the trial court sentenced him to 24 months of probation.

¶ 2        On this appeal, defendant claims that the trial court violated his sixth amendment right to confront the witnesses against him when it admitted a "Certification" from a state

employee, which stated that a search of the State's records revealed that defendant did not possess a FOID card. Defendant claims that the trial court violated his sixth amendment right, even though the trial court specifically asked defendant's counsel—twice—before admitting the document whether defendant had any objection to it and his counsel replied that defendant had no objection to its admission. Also, during the State's initial closing remarks, the prosecutor remarked that defendant's lack of a FOID card was "uncontested," without any objection by the defense or any response to that remark in the defense's closing.

¶ 3     On appeal, the State does not dispute either that the certification was testimonial or that the State needed the document to prove an element of its case, namely, defendant's lack of a FOID card. However, the State argues that defendant forfeited his right to raise this issue on appeal.

¶ 4     In response, defendant asks this court to review his claim under both the first and second prongs of the plain error doctrine and also to consider whether the failure of his counsel to object constituted ineffectiveness of counsel.

¶ 5     Both parties acknowledge that, in a prior case where this court considered a sixth amendment challenge to the admission of a similar document, this court found that the admission constituted error and required reversal. *People v. Diggins*, 2016 IL App (1st) 142088, ¶ 1. However, in *Diggins*, the defendant made a timely objection to the document's admission. *Diggins*, 2016 IL App (1st) 142088, ¶ 7.[1]

---

[1]In its brief to this court, the State asserts that *In re Deshawn G.*, 2015 IL App (1st) 143316, had a similar holding to *Diggins*. We are puzzled by this assertion because the appellate court in *Deshawn G.* specifically stated that it was avoiding the sixth amendment issue by deciding the case on other, nonconstitutional grounds. *Deshawn G.*, 2015 IL App (1st) 143316, ¶¶ 64, 70.

¶ 6       Thus, in this case, we are asked to consider whether reversal is required, even when the defendant affirmatively stated that he had no objection to admission of the document. As we explain in more detail below, the sixth amendment guarantees a defendant the opportunity to cross-examine the witnesses against him. *Infra* ¶¶ 60-63. However, it does not *require* a defendant to cross-examine those witnesses. In the case at bar, where defendant affirmatively waived[2] his right to cross-examine, we cannot find any sixth amendment error by the trial court in admitting the statement. Similarly, without additional reasons to make us question the competence of counsel in waiving this opportunity, we will not second-guess counsel's trial strategy.

¶ 7       Therefore, for the following reasons, we affirm defendant's conviction and sentence. On appeal, defendant also asks us to correct the fines and fees order entered against him. The State agrees that the ordered fines and fees are incorrect but argues that defendant forfeited this issue when his counsel failed to object to the entry of these fines and fees at sentencing. For the reasons explained below, we order the fines and fees order corrected.

¶ 8                                    BACKGROUND

¶ 9                               I. Pretrial Proceedings

¶ 10      On June 27, 2014, defendant was charged in an information with six counts of aggravated unlawful use of a weapon. Before trial, the State informed the trial court that it was proceeding on only count II, and it moved to nol-pros all the other counts.

¶ 11      Count II charged defendant with aggravated unlawful use of a weapon, "in that he knowingly carried" a firearm while not on his own land, abode, or fixed place of business

---

[2]As our supreme court has explained, waiver and forfeiture are distinct concepts. *People v. Hughes*, 2015 IL 117242, ¶ 37. " 'While waiver is the voluntary relinquishment of a known right, forfeiture is the failure to timely comply with procedural requirements.' " *Hughes*, 2015 IL 117242, ¶ 37 (quoting *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 320 n.2 (2008)).

without having been issued a currently valid FOID card, in violation of sections 24-1.6(a)(1) and 24-1.6(a)(3) of the Criminal Code of 2012 (Code). 720 ILCS 5/24-1.6(a)(1), (3) (West 2014). Section 24-1.6(a)(1) makes it an offense for a person to knowingly carry a firearm "on or about his or her person"[3] if one of a list of certain factors is also present. 720 ILCS 5/24-1.6(a)(1) (West 2014). The list of factors is contained in section 24-1.6(a)(3), and defendant was charged under subsection (c), which states that "the person possessing the firearm has not been issued a currently valid [FOID card]." 720 ILCS 5/24-1.6(a)(3)(C) (West 2014).

¶ 12        On September 10, 2014, defendant moved the trial court to find section 24-1.6 unconstitutional. Defendant argued, among other things, that requiring a person to obtain a FOID card was unconstitutional and that "a failure by the defendant to acquire a FOID card is at most a Class A misdemeanor." The trial court denied the motion. Defendant does not raise these claims again on appeal. The issue on this appeal is whether defendant forfeited his sixth amendment challenge to the admission of the certification that defendant was never issued a FOID card.

¶ 13                            II. Evidence at Trial

¶ 14        On appeal, defendant does not dispute his possession of the firearm, which was the primary issue at trial. At trial, Officer Eric Jehl testified that, on June 17, 2014, at 1 a.m., he and his partner Officer Daniel Honda were on a routine patrol in an unmarked Crown Victoria when they received a call directing them to 19th Street and Albany Avenue in Chicago. The officers were wearing badges and bullet-resistant black vests with their name and unit number. As they were driving north on Albany Avenue, Officer Jehl observed

---

[3]Section 24-1.6(a)(1) also provides for an exception that is not at issue here: "except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission[.]" 720 ILCS 5/24-1.6(a)(1) (West 2014).

4

defendant standing on the sidewalk in front of a residential building on Cullerton Street.[4] Defendant was facing two people who were sitting on the steps of the building.

¶ 15     Officer Jehl testified that, when Officer Honda, who was driving, turned onto Cullerton Street, defendant turned and looked in their direction. As the Crown Victoria came closer, defendant "grabbed the right side of his shorts and ran along the east gangway of the building [that] he was standing in front of." When defendant ran, Officer Jehl exited his vehicle and stated " 'Chicago police. Stop and show me your hands.' " Defendant continued to run, and Officer Jehl chased him. When Officer Jehl reached the gangway, he observed that defendant had reached the end of the gangway, which led into an alley. On the left side of the gangway was the residential building; and on the right side was a wooden fence separating one property from another.

¶ 16     Officer Jehl testified that defendant paused "for a second," which gave Officer Jehl an opportunity to close the distance between them, so that he was only 50 feet from defendant. When defendant paused, he looked over his right shoulder toward Officer Jehl, and then pulled out a dark-blue steel revolver from his right pocket. As defendant pulled out the revolver, defendant's phone fell out of his pocket to the ground. Defendant threw the revolver over the wooden fence, and Officer Jehl heard the revolver hit the detached garage next door. It was "the sound of metal on brick."

¶ 17     Officer Jehl testified that, after tossing the revolver, defendant crossed the alley and ran into a vacant lot. When defendant reached the middle of the lot, Officer Jehl observed five marked squad vehicles[5] approaching the intersection of 19th Street and Albany Avenue,

---

[4]Officer Jehl explained that there is no 20th Street but, if there was, Cullerton Street would be it.
[5]The sudden appearance of five squad vehicles might seem unusual. However, at a pretrial conference, it was disclosed that the officers were responding to a call that shots were fired in the vicinity

and he motioned to them, to signal that he was chasing defendant. When Sergeant George Artiga exited one of the squad vehicles, defendant stopped running and raised his hands, and Sergeant Artiga placed defendant in custody. Officer Jehl patted down defendant but recovered no weapons. Officer Jehl turned around and observed his partner Officer Honda in the alley, and Officer Jehl told Officer Honda to go back to the gangway. The two officers walked to the spot where defendant's cell phone was still lying on the sidewalk, and where Officer Jehl had observed defendant toss the gun.

¶ 18    Officer Jehl testified that he observed Officer Honda recover the gun from underneath the fence, and that it was the same gun that he had observed defendant toss over the fence. The cell phone was "almost next to where the gun was recovered." Less than two minutes elapsed between when Officer Jehl observed defendant enter the gangway and when Officer Honda recovered the gun. The gun was a Smith and Wesson .38 revolver, blue steel in color with a brown wood handle. Officer Jehl observed Officer Honda unload five live .38- caliber rounds.

¶ 19    Officer Honda testified next and corroborated the testimony of his partner, Officer Jehl. However, Officer Honda did not witness defendant toss the gun over the fence. Officer Honda also testified that he requested that the gun be sent for fingerprinting.

¶ 20    Sergeant George Artiga testified that, after defendant was detained, Sergeant Artiga directed another officer to search defendant, and the search revealed two bags containing suspected cannabis.

of 19th Street and Albany Avenue. Defendant filed a motion to bar the officers from testifying about the type of call that they were responding to. On March 3, 2015, the trial court ruled that "it would be prejudicial to hear that they're responding to shots fired, since it is a gun and it's going to go into all this stuff about how many bullets did he have, and he fired a gun, a magazine, did you have another magazine, that kind of stuff. So I think that it would be best that it is—that they're responding to a call to that area, and please make sure your officers know that *** neither side is going to be arguing about—that it is a massive number of officers that respond ***."

¶ 21                                    III. The Certification

¶ 22          The State then moved to admit People's exhibit No. 4. Since People's exhibit No. 4 is

the evidence primarily at issue on this appeal, we describe it in detail. At the top and center

of the document is a header which states: "Illinois State Police[,] *Division of*

*Administration.*" To the left and slightly below that header, the document states: "Pat Quinn,

*Governor.*" To the right, it states: "Hiram Grau, *Director.*" Below the header is a title which

states "CERTIFICATION." Under this title is the following paragraph which we quote in

full:

          "Based on the following name and date of birth information provided by the Cook

          County State's Attorney's office, I, Administrative Assistant Debbie Claypool,

          Firearms Services Bureau (FSB), Illinois State Police, do hereby certify, after a

          careful search of the FSB files, the information below to be true and accurate for

          Jesse Cox whose date of birth is ***[6] has never been issued a FOID or CCL Card as

          of July 16, 2014."

¶ 23          After this paragraph, there is a signature. The lines under the signature state:

"Administrative Assistant Debbie Claypool[,] Firearms Service Bureau[,] Illinois State

Police." The document is notarized, and the notary public states that the document was

"[s]igned and sworn (or affirmed) to before" her on July 16, 2014.

¶ 24          Before this document was admitted into evidence and published to the jury, the

following exchange occurred among the trial court and counsel:

          "ASSISTANT STATE'S ATTORNEY (ASA): Judge, we have no further live

          testimony.

---

[6]We omit defendant's birth date for security reasons.

We would, however, seek to admit People's Exhibit No. 4 which is a certified letter from the Illinois State Police, and if I may go ahead and read this for the record and for the jury.

THE COURT: Is there any objection?

ASSISTANT PUBLIC DEFENDER (APD): There is not, Judge.

THE COURT: Go ahead."

¶ 25   The ASA then read the certification to the jury and asked the judge to admit it into evidence:

"ASA: And Judge, at this time, we ask to have People's Exhibits 1 through 4 admitted into evidence. I believe 3 already has been.

THE COURT: Right.

Any objection?

APD: No, Judge.

THE COURT: And they will be admitted."

¶ 26   Thus, the trial court asked defense counsel twice if she had any objection to admitting the certification prior to its admission, and twice counsel stated that she did not. In addition, later on, when the State asked if all its exhibits, including the certification, could go back to the jury, the trial court again asked defense counsel, "[a]ny objection?" and she again replied "[n]o"—thereby making a total of three times that the trial court asked counsel if she had any objection to the certification, and three times that she replied no.

¶ 27                               IV. Defense Case

¶ 28   Defendant testified that he was 23 years old and had moved to Chicago from Arizona to take care of his sick uncle. On June 17, 2014, in the early morning hours, he was at his

stepsister's house on Cullerton Street. His stepsister and two of her friends were on the front porch, and he was standing at the bottom of the stairs talking to them. Defendant heard a vehicle revving its engine, and he turned and observed a Crown Victoria, which he assumed was a police vehicle, "flying down the street" on Albany Avenue. When he observed the police vehicle, he thought: "I had weed in my pocket, so I was thinking that I don't want to have to talk to them." Defendant turned toward the gangway and went through it "pretty quickly."

¶ 29        Defendant testified that he did not observe the police vehicle turning on to Cullerton Street, or the officer exiting the police vehicle, or the officer starting to chase him. Defendant ran through the gangway, crossed the alley, and headed back towards the street on which he lived. Later he realized that he had dropped his phone. Several police vehicles approached from different directions. One officer exited his vehicle and drew his weapon. That is when defendant put his hands up. The officer handcuffed defendant and brought him to his vehicle and asked defendant if he had "anything" that defendant "wanted him to know about." Defendant replied that he had two bags of cannabis in his left pocket, and the officer removed them.

¶ 30        Defendant denied possessing or observing a handgun on June 16 or 17, 2014, and he testified that it was dark in the gangway.

¶ 31        On cross-examination, defendant testified that there is a street light next to his sister's building on Cullerton Street and a light in the gangway. Defendant did not observe the police turn onto Cullerton Street because he ran before they turned, and he did not hear a police officer yell for him to stop. The two bags of cannabis in his pocket were "[t]en dollar bags."

Defendant did not stop in the gangway to look back at the police, and he did not know where he dropped his cell phone. He also did not know the police were behind him in the gangway.

¶ 32    On redirect, defendant testified that he did not know if the light in the gangway was working that night because it was dark.

¶ 33    Defendant was not asked at any time during the trial whether he possessed a FOID card.

¶ 34    After the defense rested, the trial court and counsel discussed what exhibits would go back with the jury. The State asked the trial court to permit all of its exhibits, including the certification, to go back to the jury. The trial court again asked defense counsel "[a]ny objections?" and she replied "[n]o."

¶ 35                    V. Closing and Conviction

¶ 36    After the defense rested, the parties proceeded to closing argument. During closing, the prosecutor made the following comment about the certification: "the Defendant hadn't been issued a Firearm Owner Identification Card, that's I think largely uncontested. We do have a certified record from the State Police, the Defendant's never been issued a Firearm Owner Identification Card, nor has he ever been issued a Concealed Carry Permit."

¶ 37    Defense counsel argued: "Ladies and gentlemen, I submit to you that the word of one officer, it's not enough. He says he did it. [Defendant] says he didn't. You know what would be a great tie-breaker? Some evidence. We don't have any." The defense did not mention the certification once in closing.

¶ 38    After closing arguments, the jury found defendant guilty of the one count on which the State proceeded: aggravated unlawful use of a weapon without a valid FOID card. 720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2014).

¶ 39                                    VI. Posttrial Proceedings

¶ 40            On April 5, 2015, defendant filed a posttrial motion for a new trial. The motion did not allege that the trial court erred by admitting Claypool's certification. On April 16, 2015, defendant filed a supplemental posttrial motion for a new trial. Like the original motion, the supplemental motion also made no claim that admitting Claypool's certification was in error.

¶ 41            On April 22, 2015, the trial court denied both motions and, after hearing facts in mitigation and aggravation, sentenced defendant to two years of intensive probation. Defense counsel moved to reconsider the sentence, and the trial court denied the motion. The ASA then informed the trial court that the total fines, costs, and fees were $1104, and the trial court told defendant that is what he owed, minus the "credit that you will get at $5.00 a day."

¶ 42            On April 22, 2015, the trial court entered an "Order Assessing Fines, Fees and Costs," which ordered the following fees: $10 for "Mental Health Court"; $5 for "Youth Diversion Peer Court"; $5 for "Drug Court"; $30 for "Children's Advocacy Center"; $30 for a "Fine to Fund Juvenile Expungement"; $100 for "Violent Crime Victim Assistance"; $100 for a "Trauma Fund Fine"; $190 for a "Felony Complaint Filed"; $60 for a "Felony Complaint Conviction"; $20 for a "Probable Cause Hearing"; $250 for "State DNA ID Sysetemy"; $15 for "Automation"; $15 for a "State Police Operations Fee"; $2 for a "Public Defender Records Automation Fee"; $2 for "State's Attorney Records Automation Fee"; $15 for "Document Storage"; $5 for "Electronic Citation Fee"; $150 for "Per Day of Trial"; $25 for "Court Services"; and $50 for a "Felony." These fines and fees totaled $1079 which was slightly less than the total stated at sentencing.

¶ 43            The fines and fees order stated that defendant had served 310 days in custody and the allowable credit for these fines "will be calculated."

¶ 44 Another order entitled "Specifications and Certificate of Conditions of Intensive Probation" and entered on April 22, 2015, stated that the total "court costs" were $1104 "less credit as allowed through the clerk."

¶ 45 On April 24, 2015, defendant filed a timely notice of appeal, and this appeal followed.

¶ 46 ANALYSIS

¶ 47 On appeal, defendant claims that the trial court violated his sixth amendment right when it admitted a certification from a state employee, after his trial counsel stated repeatedly that the defense had no objection to its admission. In the certification, an administrative assistant employed by the Illinois State Police swore that a search of the State's records revealed that defendant did not possess a FOID card. For the following reasons, we do not find this claim persuasive. However, we do correct the fines and fees order, as we describe below.

¶ 48 I. Forfeiture

¶ 49 The State argues that defendant forfeited his right to raise the sixth amendment issue on appeal. In response, defendant admits that he waived this issue for appeal by failing to object at trial, and asks us either to consider the issue under the plain error doctrine (*People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)) or to consider his failure to object as ineffective assistance of his trial counsel (*Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

¶ 50 The plain error doctrine allows a reviewing court to consider an unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious

that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48; *Piatkowski*, 225 Ill. 2d at 565. Defendant asks us to consider his claim under both prongs of the plain error doctrine.

¶ 51       Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's performance was objectively unreasonable under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *In re Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 77-78 (citing *People v. Domagala*, 2013 IL 113688, ¶ 36); see also *Strickland*, 466 U.S. at 687.

¶ 52       Under either theory, we must determine whether a clear error occurred. Under the plain error doctrine, "the initial analytical step" is to determine whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49; *Piatkowski*, 225 Ill. 2d at 565. Similarly, to succeed on a claim of ineffective assistance of counsel, defendant must show errors by counsel that were so "serious" that counsel cannot be said to have been "functioning" as counsel, which prejudiced defendant. *Strickland*, 466 U.S. at 687. Under either theory, defendant must show that the admission of this evidence constituted a clear error that counsel should have objected to.

¶ 53       Thus, we will consider whether any error occurred at all, before analyzing the issue as either plain error or ineffectiveness of counsel.

¶ 54                               II. Standard of Review

¶ 55       Defendant argues that *de novo* review applies to the question of whether his constitutional right of confrontation was violated, and the State does not argue otherwise.

¶ 56 We agree that *de novo* review applies here, since the question in this case does not involve any disputed facts. For example, in *People v. Leach*, 2012 IL 111534, ¶ 64, our supreme court applied a *de novo* standard of review to the question of whether the admission of an autopsy report, without the author's appearance at trial, violated a defendant's right of confrontation. In *Leach*, as in the case at bar, the facts were undisputed, and the declarant's statement, *i.e.*, the report, and the attorney's objections at trial were all before the supreme court. *Leach*, 2012 IL 111534, ¶¶ 4-5 (the supreme court quoted the parties' arguments from both their trial filings and the pretrial hearing which the trial court had held on the issue).

¶ 57 Similarly, in the case at bar, where the facts are undisputed and the declarant's statement and any comments about it are before us, we apply a *de novo* standard of review. *Cf. People v. Henderson*, 2017 IL App (1st) 142259, ¶ 180 (where the appellate court did "not even know the explanation of the objection offered by defense counsel or the reasons given by the trial court for its ruling," the appellate court found that "in this case, an abuse of discretion standard makes more sense" for reviewing the defendant's confrontation clause claim). See also *In re Brandon P.*, 2014 IL 116653, ¶ 45 (applying an abuse-of-discretion standard of review to the question of whether a child witness had sufficiently "appeared" for cross-examination within the meaning of the confrontation clause).

¶ 58 *De novo* review also makes more sense in this case than an abuse-of-discretion review, since this was a question that the trial court never had the opportunity to consider in the first instance. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 28.

¶ 59                                    III. Confrontation Clause

¶ 60           The confrontation clause of the sixth amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. See also *People v. Whitfield*, 2014 IL App (1st) 123135, ¶ 25 ("a defendant is guaranteed the right to confront witnesses against him by the confrontation clauses of both the United States and Illinois Constitutions"); Ill. Const. 1970, art. I, § 8. This clause guarantees "confrontation plus cross-examination of witnesses." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012).

¶ 61           "[T]he basic objective of the Confrontation Clause *** is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965)). Cross-examination is a bedrock right because it is the engine by which an accused may expose "motive or bias or other factors that might influence testimony." *People v. Davis*, 337 Ill. App. 3d 977, 984 (2003); see also *People v. Kliner*, 185 Ill. 2d 81, 130 (1998) ("Any permissible matter which affects the witness's credibility may be developed on cross-examination.").

¶ 62           In *Crawford*, the United States Supreme Court held that, under the confrontation clause, a witness's out-of-court statement could be admitted only if the witness was available for cross-examination at trial or the defendant had had an opportunity to cross-examine her. *Crawford*, 541 U.S. at 68; see also *Ohio v. Clark*, 576 U.S. ___, ___, 135 S. Ct. 2173, 2179 (2015). Prior to *Crawford*, the rule had been that an unavailable witness' out-of-court statement could be admitted if it fell under a " 'firmly rooted hearsay exception' " or the

15

statement had " 'particularized guarantees of trustworthiness.' " *Crawford*, 541 U.S. at 42, 60 (discussing and quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)); see also *Clark*, 576 U.S. at ___, 135 S. Ct. at 2179; *In re Rolandis G.*, 232 Ill. 2d 13, 23-24 (2008). In its 2004 *Crawford* decision, the United States Supreme Court rejected the *Roberts* rule, with its reliance on established hearsay exceptions, and thereby created a sweeping change in sixth amendment jurisprudence. *Crawford*, 541 U.S. at 60-62 (the *Roberts* rule is "not what the Sixth Amendment prescribes"); *Clark*, 576 U.S. at ___, 135 S. Ct. at 2179 (in *Crawford*, "we adopted a different approach"); *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011) (describing *Crawford* as "[r]ejecting *Roberts*"); *In re Rolandis G.*, 232 Ill. 2d at 24 (in *Crawford*, "the United States Supreme Court overturned *Roberts* and devised a fundamentally new procedure for analyzing confrontation clause claims").

¶ 63    In *Crawford*, the Supreme Court held that "the principal evil at which the Confrontation Clause was directed" was the "use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 U.S. at 50. "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51. In the case at bar, there is no dispute that the document was testimonial and thus falls squarely within the class of statements affected by *Crawford*.

¶ 64                              IV. Statute

¶ 65    The State argues on appeal that the certification was admitted pursuant to the public record exception to the hearsay rule and cites in support the Firearm Owners Identification Card Act (Act) (430 ILCS 65/0.01 *et seq.* (West 2014)). This Act provides in relevant part:

16

"Any certified abstract issued by the Director of State Police or transmitted electronically by the Director of State Police under this Section to a court or on request of a law enforcement agency for the record of a named person as to the status of the person's Firearm Owner's Identification Card is prima facie evidence of the facts stated in the certified abstract and if the name appearing in the abstract is the same as that of a person named in an information or warrant, the abstract is prima facie evidence that the person named in the information or warrant is the same person as the person named in the abstract and is admissible for any prosecution under this Act or any other applicable violation of law and may be admitted as proof of any prior conviction or proof of records, notices, or orders recorded on individual Firearm Owner's Identification Card records maintained by the Department of State Police." 430 ILCS 65/15b (West 2014).

¶ 66 However, satisfying a statutory hearsay exception is no longer enough for admission. See *Crawford*, 541 U.S. at 60-62 (the *Roberts* rule is "not what the Sixth Amendment prescribes"); *Clark*, 576 U.S. at ___, 135 S. Ct. at 2179 (in *Crawford*, "we adopted a different approach"); *Bullcoming*, 564 U.S. at 658 (describing *Crawford* as "[r]ejecting *Roberts*"). To be properly admitted, an out-of-court statement must satisfy both a hearsay exception and a defendant's rights under the sixth amendment. *People v. Martin*, 408 Ill. App. 3d 891, 896 (2011).

¶ 67 On appeal, defendant concedes in his reply brief that whether the certification satisfied some public record exception to the hearsay rule is "a non-issue in this case." The only issue he raises on appeal about the certification concerns the sixth amendment.

17

¶ 68                                    V. Stipulation

¶ 69         The State also argues that defendant's "affirmative waiver"[7] of any objection at trial

is "akin" to a stipulation and cites in support *People v. Probst*, 344 Ill. App. 3d 378, 387

(2003) ("Failing to object to certain State evidence has a similar effect to stipulating to the

evidence.").

¶ 70         The appellate record establishes, as we discuss in the next section, that defendant

repeatedly and affirmatively waived any objection at trial to admission of the certification.

However, waiver is still different from a stipulation, and we believe the defense's actions are

better analyzed under the invited error doctrine, which we discuss below.

¶ 71                              VI. Invited Error Doctrine

¶ 72         The State also argues that any alleged error concerning the admission of the

certification was "invited by [defendant's] own trial tactics," and we agree.

¶ 73         "Under the invited-error doctrine, a party cannot acquiesce to the manner in which the

trial court proceeds and later claim on appeal that the trial court's actions constituted error."

*People v. Manning*, 2017 IL App (2d) 140930, ¶ 16. See also *Hughes*, 2015 IL 117242 ¶ 33

("the invited error rule" states that "a party cannot complain of error that it brought about or

participated in"); *People v. Bush*, 214 Ill. 2d 318, 332 (2005) (when a party "procures,

invites, or acquiesces" to a trial court's evidentiary ruling, even if the ruling is improper, he

cannot contest the ruling on appeal). "Simply stated, a party cannot complain of error which

that party induced the court to make or to which that party consented." *In re Detention of

Swope*, 213 Ill. 2d 210, 217 (2004).

---

[7]See footnote 2 defining waiver.

¶ 74 　　　　In the case at bar, the trial court asked defense counsel on three separate occasions during trial whether defendant had any objection to the certification: (1) once before the certification was read to the jury, (2) once before the State moved to admit it as an exhibit, and (3) once again before the court allowed it to go back with the jurors during their deliberations.[8] Each time, defense counsel asserted that defendant had no objection. In addition, defense counsel did not object at the time or respond later during defendant's own closing statement to the prosecutor's observation, made during the State's initial closing statement, that defendant's lack of a FOID card was "uncontested."

¶ 75 　　　　If the defense had objected at any point during trial, when it was given multiple opportunities to do so by the trial court, the State could have easily remedied the problem by simply calling the State employee to the stand. This was an evidentiary issue that was easily fixed, as the State argues in its appellate brief. See *Hughes*, 2015 IL 117242, ¶ 38 ("new factual theories on appeal deprive the formerly prevailing party of the opportunity to present evidence on that point").

¶ 76 　　　　When the defense invited the trial court to admit the certificate by affirmatively responding to the trial court's questions that it had no objection to its admission, we cannot find any error by the trial court. Thus, we cannot find that the admission of the certification violated defendant's right to confront the State employee who authored the certification. *Probst*, 344 Ill. App. 3d at 387 ("failure to object" to admission of a lab report and

---

[8]The State also cites in support the fact that, before trial, defendant argued that requiring a person to obtain a FOID card was unconsitutional and that "a failure by the defendant to acquire a FOID card is at most a Class A misdemeanor." However, these arguments by defendant do not demonstrate an affirmative waiver of the FOID card issue. First, defendant used the indefinite article "a" before the word "failure" which is used when one talks about an item or idea in general rather than a specific item or idea, for which one would use "the" (*i.e.*, "the defendant's failure"). See englishpage.com, https://www.englishpage.com/articles/a-an-vs-the.htm (last visited Aug. 20, 2017). Second, the pretrial motions could be viewed as presenting an argument in the alternative, which is simply sound lawyering.

accompanying affidavit was "a matter of trial strategy," and, as such, "the failure to object does not implicate defendant's right to confront his accusers").

¶ 77                                    VII. Prior Case

¶ 78        As we already observed, this court considered a sixth amendment challenge to the admission of a similar certification in another case and found that the admission constituted reversible error.

¶ 79        In *Diggins*, this court reversed a defendant's conviction for aggravated unlawful use of a weapon and remanded for a new trial, on the ground that the defendant's sixth amendment right was violated by the admission, over defendant's objection, of a certified letter documenting the defendant's lack of a FOID card. *Diggins*, 2016 IL App (1st) 142088, ¶ 1.

¶ 80        *Diggins* is strikingly similar to the case at bar in many respects. In *Diggins*, as in the case at bar, police officers testified that, as they approached, defendant tossed a handgun over the fence, which the officers then retrieved. *Diggins*, 2016 IL App (1st) 142088, ¶ 4. The *Diggins* defendant was also charged with aggravated unlawful use of a weapon based on his failure to possess a FOID card. *Diggins*, 2016 IL App (1st) 142088, ¶ 3. In *Diggins*, as in the case at bar, the State sought to admit a signed and notarized letter from an employee of the Firearms Services Bureau of the Illinois State Police, stating that the defendant did not possess a FOID card. *Diggins*, 2016 IL App (1st) 142088, ¶ 6.

¶ 81    However, this is where the similarity with *Diggins* ends. In *Diggins*, defense counsel objected at trial to the admission of the letter into evidence. *Diggins*, 2016 IL App (1st) 142088, ¶ 7.[9]

¶ 82    In *Diggins*, the trial court overruled the objection, stating "[i]f you want an opportunity to subpoena and cross-examine the witness and bring that person in as a witness on behalf of the [d]efense, I will give you that opportunity." *Diggins*, 2016 IL App (1st) 142088, ¶ 7. But the trial court ruled that the exhibit was still admitted. *Diggins*, 2016 IL App (1st) 142088, ¶ 7. Thus, the opportunity for cross-examination offered by the trial court would have occurred only *after* the statement was already admitted.

¶ 83    By contrast, in the case at bar, defendant waived the opportunity for *prior* cross-examination by stating affirmatively that he had no objection to admitting the document, even though it was clear that meant there would be no cross-examination prior to its admission.

¶ 84    Thus, we do not find that *Diggins* is apposite here.

¶ 85           VIII. Plain Error and Ineffectiveness of Trial Counsel

¶ 86    We also do not find persuasive defendant's plain error and ineffectiveness arguments.

¶ 87    First, and most importantly, since there was no error by the trial court, there can be no plain error. *Piatkowski*, 225 Ill. 2d at 565. In addition, "[p]lain-error review is forfeited, *** when the defendant invites the error." *People v. Boston*, 2017 IL App (1st) 140369, ¶ 91. Also, *Crawford* errors do not rise to the level of second prong error, since a confrontation clause violation does not require reversal so long as the error was harmless beyond a

---

[9]The appellate court in *Diggins* found that the issue was preserved for its review. *Diggins*, 2016 IL App (1st) 142088, ¶ 7.

reasonable doubt. See *Henderson*, 2017 IL App (1st) 142259, ¶ 181 (citing *People v. Stechly*, 225 Ill. 2d 246, 304 (2007)).

¶ 88        Lastly, the only way that defense counsel's decision not to object to the certification could *possibly* be ineffective assistance was if defendant actually had a FOID card and the certification was in error. Otherwise, counsel's decision to waive any objection to its admission was a matter of trial strategy. *Probst*, 344 Ill. App. 3d at 387 ("As a matter of trial strategy, failure to object does not necessarily establish substandard performance.") (cited with approval in *People v. Hernandez*, 2014 IL App (2d) 131082, ¶ 37 (after defendant informed counsel of incorrect information in his presentence report, counsel's decision not to object to this information during sentencing was "a strategic decision")). In the record before us, there is nothing to suggest that defendant had a FOID card and everything to suggest that the decision was a matter of trial strategy. Counsel's strategy, from start to finish at trial, was to contest whether defendant possessed a gun. The defense offered a plausible reason, other than the gun, for defendant's flight—namely, the two bags of cannabis. During both cross-examination of the officers and the defense's closing remarks, counsel stressed that only one officer had observed defendant in possession of a gun and that this one officer had done nothing to substantiate his observation of defendant's possession of a gun. He did not take a photo of the gun with his cell phone to show where the gun was found, he did not call an evidence technician, and he did not request that defendant be swabbed for gun residue. Defense counsel argued in closing that this officer was "really the crux of this case."

¶ 89        In contrast, when examining defendant, counsel had drawn a sympathetic portrait of a 23-year-old who had moved to Chicago to care for a sick uncle and who was spending his leisure time with his family on a summer night. In closing, counsel argued that the officer

said one thing, and defendant said another, and that the officer had failed to collect the evidence which could have served as a "tie-breaker" between them. Based on the record before us, we cannot find that counsel's performance was objectively unreasonable under prevailing professional norms. *In re Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 77-78 (citing *Domagala*, 2013 IL 113688, ¶ 36); see also *Strickland*, 466 U.S. at 687.

¶ 90    For these reasons, we do not find persuasive defendant's plain error and ineffectiveness arguments.

¶ 91                            IX. Fines

¶ 92    Defendant also claims that the trial court erred in its assessment of fines and fees, resulting in an overcharge of $170, and he asks us to correct the order to reflect the correct amounts. The three claimed errors are (1) the inclusion of a $100 Trauma Fund Fine that was not authorized for crimes such as aggravated unlawful use of a weapon, (2) the inclusion of a $5 Electronic Citation Fee that was not applicable to felonies, and (3) the failure to offset a pair of fines pursuant to section 110-14(a) of the Code (725 ILCS 5/110-14(a) (West 2014))[10] against defendant's $5 per day credit for his 310 days in custody. The State concedes that these amounts were erroneously ordered, but claims that defendant forfeited the issue by failing to object when the trial court entered the fines and fees order. In response, defendant argues that we may review these fines under either the second prong of the plain error doctrine or as ineffective assistance of counsel.

¶ 93    Of the 20 separate fines and fees entered that totaled $1079, defendant now objects to only four of them, which total $170.

---

[10]These fines include a $15 State Police Operations Fee and a $50 Court System Fee. Although these charges are labeled as fees, the State concedes in its brief to this court: "Pursuant to the supreme court's reasoning in *People v. Jones*, 223 Ill. 2d 569, 581-82 (2006), these charges constitute fines."

¶ 94                                    A. Plain Error Doctrine

¶ 95          Defendant asks us to review this claim under the second prong of the plain error doctrine, which permits us to consider unpreserved error when "a clear and obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Piatkowski*, 225 Ill. 2d at 565.

¶ 96          In support of his claim that we may review the incorrect fines and fees under the second prong, defendant cites two cases: *People v. Lewis*, 234 Ill. 2d 32 (2009), and *People v. Anderson*, 402 Ill. App. 3d 186 (2010). In *Lewis*, 234 Ill. 2d at 47-49, the Illinois Supreme Court held that the trial court's entry of a fine "without any evidentiary basis," as the relevant statute required, constituted second-prong error. Similarly, in *Anderson*, 402 Ill. App. 3d at 194, the appellate court found that "the imposition of a fine not authorized by statute challenges the integrity of the judicial process" and constitutes "plain error."

¶ 97          In response, the State argues that neither of these cases apply to the case at bar. With respect to *Lewis*, 234 Ill. 2d at 47-49, the State claims that its reasoning does not apply to the fixed amounts involved in the case at bar because the fines in *Lewis* were variable and required evidentiary support. See *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 16. As for the appellate court's decision in *Anderson*, 402 Ill. App. 3d 186, the State argues that it was wrongly decided because it failed to explain how an incorrect assessment of fines affected substantial rights.

¶ 98          We do not find these arguments persuasive. The Illinois Supreme Court has recently stated that " '[t]he imposition of an unauthorized sentence affects substantial rights' and, thus, may be considered by a reviewing court even if not properly preserved in trial court." *People v. Fort*, 2017 IL 118966, ¶ 19 (quoting *People v. Hicks*, 181 Ill. 2d 541, 545 (1998)).

¶ 99        First, fines are part of a defendant's sentence. *People v. Johnson*, 2011 IL 111817, ¶ 16 (a fine is imposed as part of a sentence on a person convicted of a criminal offense); *People v. Johnson*, 2015 IL App (3d) 140364, ¶¶ 10, 11 ("fines may only be imposed by an order of the trial court," because they are "the financial component of a felony sentence").

¶ 100        Second, except for the $5 Electronic Citation Fee,[11] the State concedes that these were fines.

¶ 101        Third, the State also concedes that the fines and fees objected to by defendant were improperly entered. The State concedes that the statutes authorizing the Trauma Fund Fine and the Electronic Citation Fee do not authorize their imposition for defendant's offense. The State also concedes that defendant was entitled to offset the State Police Operations and Court System charges against his monetary credit, pursuant to section 110-14 of the Code (725 ILCS 5/110-14(a) (West 2014)).

¶ 102        In sum, since the fines were not statutorily authorized and were a part of defendant's sentence, they affected his substantial rights and may be reviewed under the second-prong of the plain error doctrine. *Fort*, 2017 IL 118966, ¶ 19 (citing *Hicks*, 181 Ill. 2d at 545). Accordingly, we vacate the $100 Trauma Fund Fine and order that the $15 State Police Operations and $50 Court System charges must be offset against his monetary credit.

¶ 103        We also vacate the $5 Electronic Citation Fee for the reasons discussed in the section below.

¶ 104        B. Ineffective Assistance of Counsel

¶ 105        In the alternative, defendant asks us to consider his failure to object to the fines and fees order as ineffective assistance of counsel. In support, he cites *People v. Siedlinski*, 279

---

[11]This fee will be vacated for the reasons discussed in the next section.

Ill. App. 3d 1003, 1005-06 (1996), which held that a counsel's failure to request the $5 *per diem* credit pursuant to section 110-14 of the Code (725 ILCS 5/110-14(a) (West 2014)) constituted ineffective assistance of counsel. The State's brief offers no response to defendant's ineffectiveness argument.

¶ 106          "Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both: (1) that his counsel's performance was objectively unreasonable under prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *** Under [this] theory, we must determine whether any error occurred." *Henderson*, 2017 IL App (1st) 142259, ¶¶ 196-97; *In re Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 77-78 (citing *Domagala*, 2013 IL 113688, ¶ 36); see also *Strickland*, 466 U.S. at 687. In the instant case, counsel failed to object to a monetary assessment composed partially of fines and fees that were not statutorily authorized and failed to request the full monetary credit that defendant was statutorily entitled to.

¶ 107          Counsel's failure to ensure either that the fines and fees imposed on defendant were authorized by statute or that defendant received the full monetary credit to which he was entitled constituted an objectively unreasonable performance with respect to the fines and fees order. See *Siedlinski*, 279 Ill. App. 3d at 1005-06 (holding that failure to request a monetary credit which defendant was statutorily entitled to constituted ineffective assistance). In addition, there is a reasonable probability that but for counsel's errors the fines and fees order would have been different; specifically, counsel's errors prejudiced defendant by raising the amount he owed. Since the error qualifies as ineffective assistance of counsel, we order the fines and fees order corrected to reflect a $170 reduction, which includes the

vacated $100 Trauma Fund Fine and $5 Electronic Citation Fee, and the offset of the $15 State Police Operations charge and $50 Court Systems charge against defendant's remaining monetary credit.

¶ 108                                    CONCLUSION

¶ 109        For the foregoing reasons, we affirm defendant's conviction and sentence, but order the fines and fees order corrected to reflect a $170 reduction, which includes the vacated $100 Trauma Fund Fine and $5 Electronic Citation Fee, and the offset of the $15 State Police Operations charge and $50 Court Systems charge against defendant's remaining monetary credit.

¶ 110        Affirmed; fines and fees order corrected.