2020 IL App (1st) 171793-U

No. 1-17-1793

Order filed June 16, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 6405 |
| | ) | |
| LARRY BROWN, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held*:   When defendant acquiesced to the admission of certain evidence, he could not argue on appeal that its admission violated his right to confrontation. Defendant's conviction for unlawful use or possession of a weapon by a felon is vacated pursuant to the one-act, one-crime rule, and the cause is remanded for a preliminary inquiry into defendant's *pro se* posttrial allegation of ineffective assistance of counsel.

¶ 2   Following a bench trial, defendant Larry Brown was found guilty of eight counts of aggravated unlawful use of a weapon (AUUW) and one count of unlawful use or possession of a

weapon by a felon (UUWF). The trial court merged the AUUW counts into a single count of the Class 2 offense of AUUW (720 ILCS 5/24-1.6(a)(1), (3)(a-5), (d)(3) (West Supp. 2013)) and sentenced defendant as a Class X offender to 10 years in prison. The court imposed a concurrent 10-year sentence for UUWF (720 ILCS 5/24-1.1(a) (West 2012)). On appeal, defendant contends that the State violated his right to confrontation by using a certified letter from the Illinois State Police to establish that he did not have a valid Firearm Owners Identification (FOID) card or a concealed carry license. He further contends that his conviction for UUWF must be vacated pursuant to the one-act, one-crime rule because it is based upon on the same physical act as his conviction for AUUW. Defendant finally contends that the cause should be remanded for a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), because the trial court failed to inquire into his posttrial *pro se* claims of ineffective assistance of counsel. We affirm the trial court's guilty findings, vacate defendant's sentence for UUWF, and remand to the trial court for a preliminary *Krankel* inquiry.

¶ 3    Following his February 6, 2014 arrest, defendant was charged with one count of armed violence, eight counts of AUUW, one count of UUWF, and one count of aggravated fleeing or attempting to elude a peace officer. Relevant to this appeal, count II for AUUW alleged that defendant knowingly carried on or about his person at a time when he was not on his land or in his abode, legal dwelling or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, an uncased, loaded, and immediately accessible firearm and had not been issued a concealed carry license at the time of the offense. Count II further alleged that the State sought to sentence defendant as a "Class 2 offender" because he had

previously been convicted of a felony. Count X for UUWF alleged that defendant knowingly possessed on or about his person a firearm after having been previously convicted of a felony.

¶ 4    Prior to trial, the defense filed a motion to suppress defendant's statements to the police, which the trial court denied after a hearing. The matter then proceeded to a bench trial.

¶ 5    Detective John Gipson of the Chicago Heights police department testified that he was on patrol with Detective Anthony Bruno around 9:16 p.m. on February 6, 2013. Detectives Meder and Hahn followed in another vehicle.[1] After Gipson observed a seatbelt violation, the officers curbed a vehicle at 16th Place and Wilson Avenue. Gipson identified defendant in court as the driver. As Gipson approached the vehicle, he heard Hahn and defendant speaking and smelled "[f]resh cannabis." When Hahn asked defendant if there were drugs in the vehicle, defendant drove away. Defendant was apprehended and taken to a police station. After being given his *Miranda* rights, defendant stated that he fled because a firearm was under the passenger seat, and he threw the firearm and cannabis from the vehicle. Gipson identified photographs of a firearm and testified that defendant signed them to identify the firearm as the one thrown from the vehicle.

¶ 6    Hahn testified that he smelled cannabis as he approached the vehicle, so he asked defendant whether there was contraband inside. Defendant replied that he had just smoked a "blunt." When Hahn asked defendant to exit the vehicle, he drove away. Hahn pursued defendant until defendant stopped and exited his vehicle. Hahn placed him in handcuffs. As he was being handcuffed, defendant said he fled because "he had thrown some weed." During a subsequent search of the chase route, Hahn recovered and photographed a loaded black semiautomatic pistol in a holster.

---

[1] The transcript does not contain the given names of Detectives Meder and Hahn.

¶ 7　　The State submitted a certified copy of defendant's conviction for manufacture and delivery of cannabis in case number 10 C6 60693-01, which was entered into evidence without objection. The State then submitted a certification from the Illinois State Police stating that as of October 15, 2015, defendant had not been issued either a FOID card or a concealed carry license. The court asked whether trial counsel objected, and counsel answered, "No objection." The court then entered the certification into evidence.

¶ 8　　Defendant testified that on February 6, 2014, he stopped his vehicle at a stop sign and saw two squad cars pass. He was wearing a seatbelt and did not have marijuana. As he continued driving, the squad cars turned and followed him. He did not realize he was "being pulled over" because the sirens and lights were not activated. He proceeded through two more stop signs, stopping at each one. At the third stop sign, the squad cars' lights activated. Defendant did not hear the sirens because he was wearing "ear plugs" and listening to music. After defendant stopped, Hahn approached the vehicle, told him to exit, and punched him. Defendant exited the vehicle, was handcuffed, and was taken to a police station.

¶ 9　　At the police station, defendant was in the "interrogation room" with Hahn, Gipson, and Meder. Gipson read defendant the *Miranda* warnings and asked whether he wanted to make a statement. Defendant did not speak to the officers and declined to sign a statement. He did not have a firearm in his vehicle, did not throw one from the vehicle, and did not tell anyone he had a firearm or marijuana or that he had smoked a blunt.

¶ 10　　During cross-examination, defendant denied "taking off" after speaking to Hahn. Rather, Hahn told him to " 'get out [of] the car' " and punched him through an open window. At the police station, he did not tell the officers anything and only asked for an attorney. Defendant denied

stating that he threw a firearm and cannabis from the vehicle, or that someone gave him the firearm two days prior to his arrest and he had it for protection. The State then showed defendant People's Exhibit No. 9 and asked whether he recognized it. Trial counsel objected, and the State explained that this exhibit was a "handwritten statement" that defendant gave to police but "refused to sign."[2] The trial court overruled the objection. Defendant testified that the handwriting was not his, and reiterated that he had declined to make a statement to police and asked for an attorney when he was given the *Miranda* warnings. He also denied signing the photographs of the firearm.

¶ 11    The State presented Meder in rebuttal. Meder testified that after Hahn approached defendant's vehicle, defendant drove away and disobeyed several stop signs. Meder denied that Hahn struck defendant or that defendant asked for an attorney. Meder was present when Gipson transcribed defendant's statement and the "substance" of the statement came from defendant. Defendant signed the photographs of the firearm. During cross-examination, Meder testified that the traffic stop was the first time he saw defendant.

¶ 12    In surrebuttal, defendant testified that he had five previous encounters with Meder dating back to the early 2000s. Meder had never called defendant by name, but once entered defendant's home during a raid. The last encounter before defendant's arrest in this case was in July 2013, and Detectives Hahn, Bruno, Gipson, and Naylor were also present.

¶ 13    The trial court found defendant guilty of eight counts of AUUW and one count of UUWF, and not guilty of armed violence and aggravated fleeing. Trial counsel filed a motion for a new trial.

---

[2] The record reflects that the State did not ask the court to admit People's Exhibit No. 9 into evidence.

¶ 14    On July 19, 2016, trial counsel told the court that defendant's family had hired a private attorney. Defendant told the trial court that he wanted a different attorney to "file ineffective assistance of counsel and certain other things." On August 16, 2016, defendant told the trial court that he was unable to hire a private attorney and wanted to proceed *pro se*. After admonishing defendant pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984), the trial court permitted defendant to proceed *pro se*. Defendant stated he had had not prepared a posttrial motion because trial counsel had not given him "anything" pertaining to the case. The trial court asked defendant what he was seeking, and he answered "[i]neffective assistance of counsel." The court repeated the question, and defendant requested transcripts, the motion to suppress, and discovery.

¶ 15    On September 12, 2016, defendant filed a *pro se* motion alleging, in pertinent part, that upon receipt of transcripts and a complete record, his attorney would file a "motion for ineffective assistance [of] counsel."[3] At a September 27, 2016 court date, the court acknowledged receipt of the *pro se* motion and defendant received copies of the grand jury transcript and discovery.

¶ 16    On March 7, 2017, defendant filed a *pro se* motion for a new trial. Following argument, the trial court denied the motion. The court merged the AUUW findings into count II for AUUW, and sentenced defendant, due to his criminal background, to a Class X term of 10 years in prison on that count. The court also sentenced defendant to a concurrent 10-year term for UUWF. Defendant filed a *pro se* motion to reconsider sentence, which the court denied. On August 3, 2017, this court allowed defendant's late notice of appeal.

¶ 17    On appeal, defendant first contends that the State violated his right to confrontation by using an Illinois State Police certification to establish that he did not have a FOID card or a

---

[3] The record does not show that any other attorney entered an appearance for defendant.

concealed carry license. Defendant acknowledges that he forfeited this issue by failing to raise it at trial and in a posttrial motion, but asks this court to review it pursuant to the plain error doctrine.

¶ 18     The plain error doctrine permits a reviewing court to address a forfeited claim where a "clear or obvious error occurred" and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 19     The State responds by invoking the doctrine of invited error, which prevents a party from "complain[ing] of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). When "a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, [he] cannot contest the admission on appeal." *People v. Bush*, 214 Ill. 2d 318, 332, (2005). "This is because, by acquiescing in rather than objecting to the admission of allegedly improper evidence, a defendant deprives the State of the opportunity to cure the alleged defect." *Id*. Because invited errors are not subject to plain-error review, we must determine whether defendant invited the alleged error at trial before considering his argument under the plain error doctrine. *People v. Sanders*, 2012 IL App (1st) 102040, ¶ 30.

¶ 20     The sixth amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI; see also Ill. Const. 1970, art. I, § 8 ("In criminal prosecutions, the accused shall have the right *** to be confronted with the witnesses against him or her ***.").

Therefore, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Since the admission of the Illinois State Police certificate does not involve disputed facts, our review of whether defendant's right of confrontation was violated is *de novo*. See *People v. Cox*, 2017 IL App (1st) 151536, ¶ 57 ("where the facts are undisputed and the declarant's statement and any comments about it are before us, we apply a *de novo* standard of review").

¶ 21    In *People v. Diggins*, 2016 IL App (1st) 142088, ¶ 16, we found that an Illinois State Police certification stating that a defendant lacked a FOID card was a testimonial statement under *Crawford* which implicated the confrontation clause. There, the State produced an Illinois State Police certification stating the defendant did not possess a valid FOID card, which was admitted into evidence over defense counsel's objection. *Id.* ¶¶ 6-7. The defendant testified on cross-examination that he did not possess a FOID card. *Id*. ¶ 8. Nonetheless, we found that the certification violated the confrontation clause and warranted a new trial since the State could not have proven the defendant lacked a FOID card without the certification and the State presented no arguments on appeal that the error was harmless. *Id*. ¶¶ 17-19.

¶ 22    In *Cox*, by contrast, we found no error in the admission of a similar Illinois State Police certification regarding a FOID card. In that case, the trial court gave trial counsel three chances to object to the certification's admission, and trial counsel declined to object each time. *Cox*, 2017 IL App (1st) 151536, ¶ 26. During closing arguments, the State argued that the fact that defendant lacked a FOID card was uncontested, and the defense did not object to the certificate. *Id*. ¶¶ 36, 74. On appeal, we determined that the defendant "invited the trial court to admit the certificate by

affirmatively responding to the trial court's questions that it had no objection to its admission." *Id*. ¶ 76. In so holding, we distinguished *Diggins* on the ground that *Diggins* concerned evidence that the defense disputed. *Id*. ¶¶ 80-83.

¶ 23    In this case, the reasoning of *Cox* applies. The trial court asked whether trial counsel objected to the admission of the Illinois State Police certification and trial counsel replied, "No objection." Nothing prevented trial counsel from making an objection. See *Cox*, 2017 IL App (1st) 151536, ¶ 75 ("If the defense had objected at any point during trial, *** the State could have easily remedied the problem by simply calling the State employee to the stand."). During closing argument, trial counsel also did not argue that the State failed to prove beyond a reasonable doubt that defendant lacked a FOID card or concealed carry permit, nor did trial counsel raise this issue in a posttrial motion. We therefore conclude that the admission of the certification did not violate defendant's rights under the confrontation clause. See *People v. Johnson*, 2019 IL App (1st) 161104, ¶¶ 28-29 (no confrontation clause violation when the defense did not object to the certification's admission or the State's mention of it during closing argument, did not dispute whether the State proved that the defendant did not have a FOID card, and did not raise the error in a posttrial motion). Rather, defendant acquiesced in the entry of the Illinois State Police certification and cannot now contend its admission was error. See *Swope*, 213 Ill. 2d at 217. Because invited errors are not subject to plain-error review, we need not consider whether plain error occurred. *Sanders*, 2012 IL App (1st) 102040, ¶ 30.

¶ 24    In the alternative, defendant argues he was denied the effective assistance of trial counsel because counsel failed to object to the admission of the Illinois State Police certification. To establish ineffective assistance, a defendant must show that "(1) counsel's performance was

objectively unreasonable compared to prevailing professional standards and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Cherry*, 2016 IL 118728, ¶ 30 (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). In order to succeed on a claim of ineffective assistance, a defendant must overcome the strong presumption that counsel's challenged action or inaction was the product of sound trial strategy. *People v. Manning*, 241 Ill. 2d 319, 327 (2011). "[D]ecisions regarding what matters to object to and when to object are matters of trial strategy," and "will typically not support a claim of ineffective representation." (Internal quotation marks omitted.) *People v. Macias*, 2015 IL App (1st) 132039, ¶ 82.

¶ 25    When considering a similar claim in *Cox*, we found that "the only way that defense counsel's decision not to object to the certification could possibly be ineffective assistance was if defendant actually had a FOID card and the certification was in error." (Emphasis omitted.) *Cox*, 2017 IL App (1st) 151536, ¶ 88. In the case at bar, there is nothing in the record on appeal that suggests defendant had a valid FOID card or a concealed permit, or that the Illinois State Police certification was erroneous. Further, trial counsel did not argue that defendant possessed a valid FOID card or concealed carry permit; rather, the defense theory at trial was that defendant did not possess the firearm at issue and that the detectives assumed it belonged to defendant due to their prior contact with him. Overall, the record supports the conclusion that trial counsel's decision not to object was trial strategy. See *People v. Phillips*, 217 Ill. 2d 270, 286-87 (2005) (concluding that trial counsel's cross-examination of a forensic scientist on a report may not have had "any tactical advantage" when "such testimony would have been an unnecessary distraction" from the defense's theory of the case). Defendant has not overcome the strong presumption that this strategy was

sound. See *Manning*, 241 Ill. 2d at 327; see also *Johnson*, 2019 IL App (1st) 161104, ¶ 32 (concluding that trial counsel's decision not to object was an intentional strategy because testimony regarding the defendant's failure to possess a FOID card would only have emphasized his unlawful conduct). Accordingly, defendant's claim of ineffective assistance of counsel must fail.

¶ 26    Defendant next contends, and the State concedes, that his conviction for UUWF should be vacated under the one-act, one-crime rule because it is based on the same physical act as his conviction for AUUW. Defendant acknowledges he did not preserve this issue in the trial court because he failed to raise it in a postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, one-act, one-crime errors are subject to the plain-error exception to the forfeiture rule because they implicate the integrity of the judicial process. *People v. Nunez*, 236 Ill. 2d 488, 493 (2010). A one-act, one-crime challenge presents a question of law, which we review *de novo*. *People v. Almond*, 2015 IL 113817, ¶ 47.

¶ 27    Under the one-act, one-crime rule, "a defendant may not be convicted of multiple offenses that are based upon precisely the same physical act." *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Accordingly, where two convictions arise from the same physical act, the sentence should be imposed on the more serious offense, and the sentence on the less serious offense should be vacated. *People v. West*, 2017 IL App (1st) 143632, ¶ 24. When "determining which offense is the more serious, a reviewing court compares the relative punishments prescribed by the legislature for each offense," as greater punishment is mandated for the more serious offense. See *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 28    As the State correctly concedes, defendant's convictions for AUUW and UUWF, as charged in this case, are both predicated on the same physical act of possession of the same firearm

and therefore violate the one-act, one-crime rule. *Id*. ¶¶ 24-25. Defendant was convicted of the Class 2 felony of AUUW based on a prior felony conviction (720 ILCS 5/24-1.6(a)(1), (3)(a-5), (d)(3) (West Supp 2013)), and the Class 3 felony of UUWF (720 ILCS 5/24-1.1(a) (West 2012)). Therefore, UUWF is the less serious offense (*Artis*, 232 Ill. 2d at 170), and the sentence thereon must be vacated (*West*, 2017 IL App (1st) 143632, ¶ 24).

¶ 29    Defendant finally contends that the cause should be remanded for a preliminary *Krankel* inquiry into his posttrial *pro se* oral and written claims of ineffective assistance of trial counsel. The State agrees, noting that although defendant told the court at a posttrial hearing that he wanted to hire a new attorney to "file ineffective assistance of counsel," the court never inquired into his claims.

¶ 30    The *Krankel* procedure "is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29. "A *pro se* defendant need only bring his or her claim to the trial court's attention." *People v. Jackson*, 2020 IL 124112, ¶ 96. A defendant is not required to file a written motion but may raise the issue orally or through a letter or note to the trial court. *People v. Ayres*, 2017 IL 120071, ¶ 11. Where the trial court does not conduct a preliminary examination into the factual basis of a defendant's *pro se* allegations of ineffective assistance, the case must be remanded for the limited purpose of allowing the court to do so. *People v. Craig*, 2020 IL App (2d) 170679, ¶ 13. A trial court's alleged failure to inquire into a claim of ineffective assistance is reviewed *de novo*. *People v. Bates*, 2019 IL 124143, ¶ 14.

¶ 31    We agree with the parties that the trial court's duty to conduct a preliminary inquiry was triggered when defendant stated that he wished to retain a new attorney to file an ineffective assistance of counsel claim. See *Ayres*, 2017 IL 120071, ¶¶ 14, 24 (a defendant's bare use of the

words "ineffective assistance of counsel," without any further explanation, is sufficient to trigger the inquiry). Moreover, while representing himself, defendant stated orally and in writing that he wished to raise claims of ineffective assistance of counsel. The record shows, however, that the trial court never inquired into the factual basis of defendant's claims. The case must therefore be remanded for a preliminary *Krankel* inquiry. *Id.* ¶ 26.

¶ 32 For the reasons discussed above, we vacate defendant's sentence for UUWF and remand the case to the trial court for a preliminary *Krankel* inquiry. We affirm the judgment of the trial court in all other aspects.

¶ 33 Affirmed in part; vacated in part; remanded.