# Illinois Official Reports

## Appellate Court

---

### *People v. Beck*, 2019 IL App (1st) 161626

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTERIUS BECK, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-16-1626 |
| Filed<br>Rehearing denied<br>Modified opinion filed | June 18, 2019<br>July 11, 2019<br>July 16, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-13839(01); the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded for sentencing. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Jessica D. Ware, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Christian E. Lopez, Assistant State's Attorneys, of counsel), for the People. |

Panel JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Pucinski and Hyman concurred in the judgment and opinion.

## OPINION

¶ 1    Following a 2016 bench trial, defendant Anterius Beck was convicted of unlawful possession of a firearm by a street gang member and 10 counts of aggravated unlawful use of a weapon (AUUW), for which he was sentenced to five years' imprisonment. On appeal, Beck argues that (i) the State failed to present sufficient evidence to establish that the Black P. Stones[1] are a street gang as defined by the Illinois Streetgang Terrorism Omnibus Prevention Act (Act) (740 ILCS 147/10 (West 2014)); (ii) section 24-1.8 (a)(1), (b) of the Criminal Code of 2012 (720 ILCS 5/24-1.8(a)(1), (b) (West 2014)), under which he was convicted, is unconstitutional because it impermissibly criminalizes a defendant's status in violation of the eighth amendment; and (iii) the admission of a "certification" by the State to prove that he did not have a Concealed Carry License and Firearm Owner's Identification Card violated his sixth amendment right to confrontation. For the reasons that follow, we reverse Beck's conviction for unlawful possession of a firearm by a street gang member, affirm his convictions of AUUW, and remand for sentencing on the AUUW convictions.

¶ 2                                    BACKGROUND

¶ 3    Beck was charged with 1 count of unlawful possession of a firearm by a street gang member and 10 counts of aggravated unlawful use of a weapon after a police officer, during a foot chase on August 7, 2015, recovered a gun that Beck tossed to the ground.

¶ 4    At trial, three police officers from the Chicago Police Department gang investigation unit— Officers Albert Wyroba, Paul Heyden, and Apacible[2]—testified to the events of that day. At approximately 8 p.m. on August 7, Apacible and Wyroba were performing surveillance on the 700 block of North Lorel Avenue in Chicago, while Heyden was working as an enforcement officer in the same location. Apacible received information regarding a black male wearing a blue sweatshirt, white T-shirt, and red pants, who was seen in the area armed with a gun. Wyroba observed a man matching that description, identified in court as Beck, place a handgun into his front right pocket while standing among a crowd of approximately 20 other individuals. Wyroba alerted enforcement officers.

¶ 5    Heyden received the alert to detain Beck and exited his unmarked Chicago police vehicle, at which point Beck saw the officer and began running.

¶ 6    Heyden and Wyroba, who also saw Beck flee, immediately gave chase. As Beck headed west through a gangway, Apacible joined the pursuit. At this point, Beck took the gun out of his right pocket and threw it to the ground. Heyden recovered the gun while Apacible and

---

[1] The record refers to the "Black P. Stones" and the "L (or L.) Town Black P. Stones" interchangeably, but all names refer to the same entity. For clarity, we will refer to the "Black P. Stones" unless directly quoting from the record.

[2] Officer Apacible's first name is not mentioned in the record.

Wyroba continued to give chase. Beck was ultimately detained at an elementary school by Apacible and Wyroba.

¶ 7    Heyden stood over the gun until another officer secured it, at which point it was unloaded, placed into a bag, and inventoried. The firearm was a 9-millimeter Ruger handgun with two rounds in the magazine. Beck was arrested and transported to the police station.

¶ 8    After Beck waived his *Miranda* rights, he spoke to two of the officers. Beck told the officers that he had been a member of the Black P. Stones for five years and he held the position as the "chief of the shorties" of the "L Town Black P. Stones" and that he had been blessed in by their chief.

¶ 9    Officer Wyroba testified based on his eight years' experience as a gang officer that to be "blessed" meant to become an active member of the Black P. Stones. Officer Wyroba further testified that the Black P. Stones are a street gang that controls the narcotics and weapons trade in an area on the west side of Chicago. That area included Kinzie to Iowa Streets, and Laramie to Central Avenues. Officer Wyroba testified that Beck had a tattoo on one of his forearms depicting the street signs of Lorel and Huron, which signified the Black P. Stones' control of the area. The State introduced into evidence a photograph depicting Beck's forearm tattoos.

¶ 10    The State also introduced into evidence a certified letter from the Illinois State Police Division of Administration stating that Beck had neither a Firearm Owner's Identification Card (FOID card) nor Concealed Carry License (CCL). Finally, the State offered into evidence a certified copy of Beck's adjudication of delinquency for robbery in case number 14 JD 03937. Beck did not object to the admission of either document.

¶ 11    After the State rested, the trial court denied Beck's motion for a directed finding. Beck rested without presenting any evidence.

¶ 12    The trial court found Beck guilty on all counts. The court merged the convictions and sentenced Beck to five years in the Illinois Department of Corrections, which he has fully served.[3] This appeal follows.

¶ 13    ANALYSIS

¶ 14    Initially, we address Beck's challenge to the sufficiency of the evidence to convict him of unlawful possession of a weapon by a street gang member. A challenge to the sufficiency of the evidence requires us to view the trial evidence in the light most favorable to the prosecution and inquire whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Smith*, 185 Ill. 2d 532, 541 (1999). A criminal conviction will not be reversed "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt." *People v. Graham*, 392 Ill. App. 3d 1001, 1009 (2009). It is the function of

---

[3]Beck's notice of appeal was filed on May 18, 2016. The record on appeal was not filed until December 12, 2016, and it was another 16 months before Beck, represented by the Office of the State Appellate Defender, filed his opening brief. This court has previously commented on chronic delays in criminal appeals that result in a defendant serving the entirety or the majority of his sentence before the appeal is ready for consideration by the court. See *People v. Dailey*, 2018 IL App (1st) 152882; *People v. Cisco*, 2019 IL App (4th) 160515. We continue to be troubled by the delays in resolving these appeals.

the trier of fact to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence. *Id.*

¶ 15 The State must prove every essential element of the crime beyond a reasonable doubt. *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). In the context of this case, the State was required to prove that Beck knowingly

> "possesses, carries, or conceals on or about his or her person a firearm and firearm ammunition while on any street, road, alley, gangway, sidewalk, or any other lands, except when inside his or her own abode or inside his or her fixed place of business, and has not been issued a currently valid Firearm Owner's Identification Card and is a member of a street gang." 720 ILCS 5/24-1.8(a)(1) (West 2014).

A street gang is defined as

> "any combination, confederation, alliance, network, conspiracy, understanding, or other similar conjoining, in law or in fact, of 3 or more persons with an established hierarchy that, through its membership or through the agency of any member engages in a course or pattern of criminal activity." 740 ILCS 147/10 (West 2014).

¶ 16 Here, Beck challenges the State's proof as to the element of "[c]ourse or pattern of criminal activity." The Act defines a course or pattern of criminal activity as:

> "[Two] or more gang-related criminal offenses committed in whole or in part within this State when:
>
>> (1) at least one such offense was committed after the effective date of this Act [(January 1, 1993)];
>>
>> (2) both offenses were committed within 5 years of each other; and
>>
>> (3) at least one offense involved the solicitation to commit, conspiracy to commit, attempt to commit, or commission of any offense defined as a felony or forcible felony under the Criminal Code of 1961 or the Criminal Code of 2012." *Id.*

¶ 17 As proof of the element of course or pattern of criminal activity, the State cites the testimony of Office Wyroba, who had eight years of experience as a gang officer. Specifically, Wyroba testified that throughout his career he investigated "gang crimes' including homicides, aggravated batteries, and "other gun weapons related crimes." With regard to the Black P. Stones, Wyroba testified that they were a street gang that controlled "the narcotics and weapons trade in a specific area on the west side [of Chicago]."

¶ 18 Beck maintains that this testimony was insufficient because neither Wyroba nor any other witness testified to two specific crimes the Black P. Stones committed within five years of each other after 1993, the effective date of the Act. We agree. Officer Wyroba's general testimony that the Black P. Stones controlled the trade of narcotics and weapons, without more, does not establish a course or pattern of criminal activity as that term is defined in the Act. The testimony lacks any reference to specific crimes or dates, which the Act requires.

¶ 19 We are unpersuaded by the State's citation of *People v. Murray*, 2017 IL App (2d) 150599, *appeal allowed*, No. 123289 (Ill. May 30, 2018).[4] In *Murray*, the defendant, also convicted of unlawful possession of a firearm by a street gang member, argued that the State's evidence

---

[4]At oral argument, the State urged us to postpone resolution of this case until the supreme court's decision in *Murray*, but finding *Murray* distinguishable, we see no reason to do so.

was insufficient to prove that the Latin Kings were a street gang because the State failed to show a "course or pattern of criminal activity" by the Latin Kings. *Id.* ¶ 80. There, the State introduced testimony by an officer who was qualified as a gang expert. *Id.* ¶ 82. The officer first testified that gangs use guns to protect their drugs, cash, and members from rival gangs and engage in intimidation, if necessary, to benefit the gang, before opining that the Latin Kings were a street gang. *Id.* We found this sufficient to prove the Latin Kings were a street gang, citing *People v. Jamesson*, 329 Ill. App. 3d 446, 460 (2002), for the proposition that "an expert on gangs may opine on the ultimate issue of whether an organization is a street gang engaged in a course or pattern of criminal activity without testifying to specific dates or incidents." *Murray*, 2017 IL App (2d) 150599, ¶ 83; see also *People v. Berrios*, 2018 IL App (2d) 150824, ¶ 22 (same).

¶ 20    Here, however, neither Officer Wyroba nor any other testifying officer was qualified as an expert on gang activity. This is not a distinction without a difference. To be sure, while both experts and lay witnesses may opine as to an ultimate issue in a case (*Richardson v. Chapman*, 175 Ill. 2d 98, 107 (1997)), a lay witness's opinion cannot be based on scientific, technical, or other specialized knowledge within the scope of Illinois Rule of Evidence 702 (eff. Jan. 1, 2011), which prescribes the subject matter of expert testimony (*People v. Brown*, 2017 IL App (1st) 142197, ¶ 58 (citing Ill. R. Evid. 701 (eff. Jan. 1, 2011))). A witness's opinion regarding whether a particular organization is a "street gang" within the meaning of the Act is one that requires specialized knowledge. The Act defines "street gang" with great particularity, specifying the number of people that must be affiliated with the organization, the need for an "established hierarchy" and, of course, "a course or pattern of criminal activity" by the organization. See 740 ILCS 147/10 (West 2014). Because Officer Wyroba was not qualified as an expert, his failure to testify to the basis of his opinion that the Black P. Stones was a street gang was fatal to the State's case and insufficient to prove Beck's possession of a firearm by a street gang member. Therefore, Beck's conviction on this count is reversed.[5]

¶ 21    Because we reverse Beck's conviction for unlawful possession of a firearm by a street gang member based on the insufficiency of the evidence, we need not consider Beck's argument that section 24-1.8(a)(1), (b) of the Criminal Code of 2012, under which he was convicted, is unconstitutional. See *Mulay v. Mulay*, 225 Ill. 2d 601, 606 (2007) (reviewing court should decide cases whenever possible on nonconstitutional grounds).

¶ 22    Beck's final argument concerns the admission of a certified letter from the Illinois State Police to prove that Beck had never been issued a FOID card or CCL. Beck argues that the letter was testimonial evidence, such that its admission violated his sixth amendment right to confrontation, because the declarant was not subject to prior cross-examination and was not

---

[5]This case may illustrate the old adage "Be careful what you wish for." The State is now on notice that in every case in which the defendant is charged with unlawful possession of a firearm by a street gang member, it must satisfy the "street gang" element of the offense either through expert testimony or through evidence of two felonies committed by gang members within five years of each other after the Act's effective date. This is true whether or not the defendant raises the issue at trial. Nothing says the State must use only nonviolent felonies or two felonies that are remote in time from the offense with which the defendant is charged in order to prove this element of the offense. Clearly, most defendants faced with the admission of other gang crimes evidence that the State must introduce in its case-in-chief would likely prefer to stipulate that whatever gang the defendant is charged with being a member of, in fact, meets the statutory definition.

shown to be unavailable and the affidavit was admitted substantively for its truth. We review *de novo* whether an out of court statement violates a defendant's constitutional right to confrontation. See *People v. Cox*, 2017 IL App (1st) 151536, ¶¶ 55-58 (reviewing *de novo* alleged confrontation clause violation where facts were undisputed and trial court had no opportunity to consider the claim in the first instance).

¶ 23    The confrontation clause of both the federal and state constitutions provides that, in criminal prosecutions, a defendant shall be allowed to confront the witnesses against him. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Supreme Court held that the sixth amendment prohibited the admission of out-of-court "testimonial" statements against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. This court has held that a notarized, certified letter alleging a defendant's lack of a FOID card is testimonial in nature and, as such, a defendant is entitled to confront the author of the letter. See *People v. Diggins*, 2016 IL App (1st) 142088, ¶¶ 16-17; see also *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307-10 (2009) (documents labeled as "certificates" are functionally equivalent to affidavits and are testimonial in nature).

¶ 24    As Beck acknowledges, he has failed to preserve his confrontation clause challenge for review by objecting at trial and in a written posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). His failure to do so operates as forfeiture as to this issue on appeal. *People v. Ward*, 154 Ill. 2d 272, 293 (1992). Nevertheless, Beck urges us to review for plain error, or, alternatively, contends that his counsel's failure to object to the admission of the certification letter constituted ineffective assistance of counsel.

¶ 25    The plain error doctrine allows a reviewing court to bypass a party's forfeiture of an issue if the error is clear or obvious and either (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against him, regardless of the seriousness of the error, or (2) the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Smith*, 2016 IL 119659, ¶ 39.

¶ 26    The State counters that Beck in fact acquiesced to the admission of the certified letter and the plain error doctrine is therefore inapplicable. We agree. While the plain error doctrine ordinarily excepts a defendant from the consequences of a procedural default, it is not applicable to a defendant who acquiesces in the complained-of error. *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 19. In other words, "a party cannot complain of error which that party induced the court to make or to which that party consented. The rationale behind this well-established rule is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

¶ 27    *Cox* is instructive on this issue. There, the State sought to admit a certified letter reflecting that the defendant was not in possession of a FOID card as part of its proof that the defendant committed the offense of aggravated unlawful use of a weapon. *Cox*, 2017 IL App (1st) 151536, ¶ 47. On appeal, the defendant argued that admission of the letter without allowing him to cross-examine the declarant violated the confrontation clause. *Id.* We noted that defense counsel had three opportunities to object to the use of the certified letter but at each opportunity he affirmatively stated he had no objection. *Id.* ¶ 74. Accordingly, we found no error on the part of the trial court where defendant "invited the trial court to admit the certificate" by failing

to object. *Id.* ¶ 75. *Contra People v. Diggins*, 2016 IL App (1st) 142088, ¶¶ 12, 16-17 (finding admission of certified letter indicating that defendant did not possess a FOID card violated confrontation clause where defense counsel objected to the letter's introduction at trial).

¶ 28    Here, just as in *Cox*, Beck did not object to admission of the Illinois State Police certification either at trial or in a posttrial motion. Although the trial court did not ask whether there was an objection to the admission of the certification during trial, nothing prevented defense counsel from raising an objection. *Cox*, 2017 IL App (1st) 151536, ¶ 75 ("If the defense had objected at any point during trial *** , the State could have easily remedied the problem by simply calling the State employee to the stand."). During closing argument, defense counsel also did not mention the certification or dispute whether the State proved beyond a reasonable doubt that Beck lacked a FOID card or CCL. Finally, counsel did not raise the claimed error in Beck's posttrial motion. Under these circumstances, we conclude that Beck acquiesced in the admission of the certified letter, thus precluding plain error review. See *People v. Boston*, 2018 IL App (1st) 140369, ¶ 109 (invited errors not subject to review for plain error).

¶ 29    In any event, contrary to Beck's contention, the evidence on this issue was not so closely balanced so as to merit plain error review. Beck's own actions of discarding the gun while running from the police could lead a reasonable fact finder to infer that Beck's possession of the firearm was illegal, *i.e.*, that he did not have a FOID card or a CCL. Nor does a confrontation clause violation amount to structural error under the second prong of plain error review. See *Cox*, 2017 IL App (1st) 151536, ¶ 87.

¶ 30    In the alternative, Beck argues that his counsel's decision not to object to the admission of the certified letter constitutes ineffective assistance. To establish ineffective assistance of counsel, a defendant must show the conduct of defense counsel fell below an objective standard of reasonableness and, but for counsel's deficient performance, a reasonable probability exists the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). If we determine that a defendant has failed to satisfy one prong of the *Strickland* analysis, we need not consider whether he can satisfy the remaining prong. *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 31    There is a strong presumption that counsel's challenged action or inaction was the product of trial strategy. *People v. Dupree*, 2018 IL 122307, ¶ 44. Stated differently, trial counsel's strategic decisions are entitled to substantial deference. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 31. Matters of trial strategy include decisions regarding what matter to object to and when to object. *People v. Perry*, 224 Ill. 2d 312, 344 (2007).

¶ 32    In *Cox*, we rejected the defendant's similar claim of ineffective assistance of counsel, holding "the only way that defense counsel's decision not to object to the certification could *possibly* be ineffective assistance was if defendant actually had a FOID card and the certification was in error. Otherwise, counsel's decision to waive any objection to its admission was a matter of trial strategy." (Emphasis in original.) *Cox*, 2017 IL App (1st) 151536, ¶ 88. Here, nothing in the record suggests Beck possessed a valid FOID card or CCL. Instead, defense counsel's theory of the case was that Officer Wyroba was incredible and there was no evidence the gun recovered from Beck was operable. Our review of the record reveals that counsel's decision not to object to the admission of the certified letter was strategic, as he had no reason to highlight Beck's failure to possess a FOID card or CCL. Because Beck cannot

overcome the strong presumption that counsel's decision not to object to the certified letter was sound trial strategy, Beck's claim of ineffective assistance fails.

¶ 33    As a final matter, we note that, because the court merged the convictions of AUUW with the conviction of unlawful possession of a firearm by a street gang member, it did not impose a sentence on the AUUW convictions. Having vacated the unlawful possession offense, we must determine whether we have jurisdiction to remand for sentencing on the 10 counts of AUUW.[6]

¶ 34    The final step in a criminal judgment is a sentence; without a sentence, we ordinarily cannot entertain an appeal due to lack of jurisdiction. See *People v. Relerford*, 2017 IL 121094, ¶ 71. However, our supreme court noted a limited exception to this rule in *People v. Dixon*, 91 Ill. 2d 346 (1982). In *Dixon*, the trial court (incorrectly) found that the defendant's conviction for two lesser offenses merged into his convictions for two more serious offenses and so did not impose sentence on those lesser offenses. *Id.* at 349. On appeal, this court reversed one of the sentenced convictions but declined the State's request to remand for sentencing on the lesser (unsentenced) convictions. *Id.*

¶ 35    The State appealed, and the supreme court reversed, holding that the "anomalous" situation authorized this court to remand for imposition of sentence. *Id.* at 353. The court reasoned that, even though the unsentenced convictions were not final orders, both the sentenced and unsentenced convictions "all arose from a series of separate but closely related acts." *Id.* This, coupled with the fact that the unsentenced convictions were "intimately related to and 'dependent upon' the [sentenced] convictions," allowed this court to remand for sentencing. *Id.* (quoting Ill. S. Ct. R. 615(b)(2)).

¶ 36    Similarly, here, Beck's (sentenced) conviction for unlawful possession of a weapon by a street gang member and his (unsentenced) convictions for AUUW are "intimately related" to each other, arising from the same act. And, just as in *Dixon*, the trial court's reasoning for declining to sentence Beck on the AUUW offenses is clear from the record: the court merged those offenses into the more serious possession offense. *Contra Relerford*, 2017 IL 121094, ¶ 74 (where record was silent as to reason for trial court's failure to sentence defendant on three offenses for which he was convicted, appellate court lacked jurisdiction to address merits of those convictions or remand for sentencing). Accordingly, we conclude that we have jurisdiction to remand for sentencing on the AUUW convictions.

¶ 37                    Modified Opinion on the Denial of the State's Petition for Rehearing

¶ 38    In its petition for rehearing, the State contends that, instead of reversing outright, we should remand for a new trial. The State argues that we have contravened the well-established rule that, in determining whether retrial is permitted under the double jeopardy clause, we should consider Wyroba's gang-related testimony even though it was *improperly* admitted. But we never said Wyroba's testimony was inadmissible; rather, we concluded it was *insufficient* to establish a necessary element of the offense because Wyroba was never qualified as an expert. Even considering Wyroba's conclusory statement that the Black P. Stones organization is a street gang, the record still fails to include the facts necessary to support that conclusion—

---

[6]Although Beck has served the entirety of his sentence on the street-gang-related offense and cannot be sentenced to any greater term, we address the issue of sentencing on the AUUW convictions for the sake of completeness and clarity of Beck's criminal record.

whether admitted properly or improperly—and is, therefore, insufficient to sustain Beck's conviction. Consequently, outright reversal is warranted.

CONCLUSION

We reverse Beck's conviction for unlawful possession of a firearm by a street gang member and affirm his conviction on 10 counts of aggravated unlawful use of a weapon.

Affirmed in part, reversed in part, and remanded for sentencing.