2020 IL App (1st) 171894-U

No. 1-17-1894

Order filed June 25, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 13064 |
| | ) | |
| ALFRED LEWIS, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where the State failed to prove beyond a reasonable doubt that defendant entered the subject building with the intent to commit a felony, as opposed to a misdemeanor, his conviction for burglary is reversed. We remand to the circuit court for imposition of sentence on an unsentenced guilty finding for violation of an order of protection.

¶ 2   Following a bench trial, defendant Alfred Lewis was found guilty of one count of burglary (720 ILCS 5/19-1(a) (West 2016)) and one count of violating an order of protection (720 ILCS 5/12-3.4(d) (West 2016)). He was sentenced to 24 months of probation for burglary. On appeal,

defendant challenges the sufficiency of the evidence. Specifically, he contends that where the State presented no evidence that he had a prior conviction for violating an order of protection, it failed to prove beyond a reasonable doubt that he entered the subject property with the intent to commit felony violation of an order of protection, as opposed to misdemeanor violation of an order of protection, and, therefore, failed to prove him guilty of burglary. Defendant contends that his conviction for burglary must be reversed and that his "conviction" for violating of an order of protection must be reduced from a felony to a Class A misdemeanor.[1]

¶ 3      For the reasons that follow, we reverse defendant's conviction for burglary and remand to the trial court for imposition of a sentence on the count charging defendant with violating an order of protection.

¶ 4      Defendant was charged by indictment with one count of burglary and one count of violating an order of protection. Count 1, the burglary charge, alleged that on August 4, 2016, defendant knowingly and without authority entered the garage of his mother, Betty Lewis, "with the intent to commit therein a felony, to wit: a felony violation of an order of protection." Count 2 alleged that on that same date, defendant knowingly or intentionally came to a protected address after having been served with notice of the contents of an order of protection in "case number 16DV07078" or having otherwise acquired actual knowledge of the contents of that order of protection, "and he has been previously convicted of the offense of violation of an order of protection, under case number 16DV0707801."

---

[1] In his opening brief, defendant also contended that this court must vacate his "conviction" for violating of an order of protection based on one-act, one-crime principles. However, defendant withdrew that contention in his reply brief, acknowledging that because no sentence was entered on the guilty finding, he had not been convicted of the offense. Despite this acknowledgment, defendant nevertheless continued to assert in his reply brief that this court should reduce his "conviction" for violating an order of protection to a Class A misdemeanor.

¶ 5    At trial, Betty Lewis testified that she was 86 years old and had five children, the youngest of whom was defendant. Her other children included Deirdre Suggs and Clarence Keith. Since 1961, Lewis had owned a single-family home with a detached garage in Chicago. At the time of her testimony, Lewis lived both at the house in Chicago and at Suggs's home in Georgia, splitting her time between the two locations.

¶ 6    Lewis testified that at some point in 2016, prior to May, she told defendant she did not want him in her Chicago home, although she did not use those exact words. She and defendant also discussed him getting his own place. Then, in May 2016, Lewis obtained an order of protection against defendant. Lewis stated that on August 4, 2016, defendant did not have her permission to go inside her garage.

¶ 7    In court, Lewis identified People's Exhibit No. 1 as the order of protection. The order, which was admitted into evidence, was titled "Plenary Order of Protection" and dated May 27, 2016. It indicated it was entered in case number 16DV07078, listed Lewis as the petitioner and defendant as the respondent, and stated it was in effect until May 25, 2018. The order provided, in relevant part, that defendant was required to stay away from Lewis and "shall not enter or remain in the household or premises located at" Lewis's Chicago address. The order also provided as follows:

"Any knowing violation of any order of protection forbidding *** entering or remaining present at specified places when the protected person is present or granting exclusive possession of the residence or household, prohibiting entering or remaining at the household while under the influence of alcohol or drugs and so constituting a threat to the safety and well-being of any protected person, or granting a stay away order, is a Class

A misdemeanor. Grant or exclusive possession of the residence or household shall constitute notice forbidding trespass to land. Any knowing violation of any order awarding legal custody or physical care of a child, or prohibiting removal or concealment of a child may be a Class 4 felony. Any willful violation of any order is contempt of court. Any violation may result in fine or imprisonment. Stalking is a felony."

¶ 8 On cross-examination, Lewis disagreed that defendant had "pretty much" lived with her in the Chicago house his entire life. She stated that she would have to look at papers and dates in order to say whether he lived with her "for the most part" in the six or seven years leading up to their conversation about him getting his own place. Lewis was aware that defendant had personal property in her garage, including medical equipment, at the time she went to court to obtain the order of protection. She was not present when defendant was arrested on August 4, 2016. To the best of her recollection, she was in Georgia that day.

¶ 9 Deirdre Suggs testified that on May 5, 2016, she accompanied Lewis to court to get a temporary order of protection against defendant. The next day, Suggs had a security alarm system installed at the Chicago home, both on the house itself and the detached garage. On May 10, 2016, Lewis signed a document giving Suggs power of attorney. Later that month, Suggs and Lewis obtained a "final" order of protection. Suggs identified People's Exhibit No. 1 as that order of protection.

¶ 10 On a date early in August 2016, Suggs was alerted via a monitor system on her phone that the alarm had been triggered at the Chicago house. She then received a phone call from the home security company, whom she asked to send the police to check on the house. Suggs stated that on August 4, 2016, defendant did not have her permission to go into the Chicago house or its garage.

¶ 11    On cross-examination, Suggs stated that defendant lived in the Chicago house through high school and then visited "off and on most of his life." She explained that all five of Lewis's children had belongings in the garage. Suggs did not know specifically what items defendant stored there. The last time Suggs looked in the garage prior to defendant's arrest was on May 4, 2016, when she gave defendant a warning that he had to leave that night. On the day the judge issued the protection order, defendant, accompanied by the police, went to the house and loaded two trucks with belongings. Suggs's and defendant's brother, Clarence Keith, was among a group of people who helped defendant move his things from the house. On redirect, Suggs stated that at no time in August of 2016 did defendant try to make arrangements with her to get his remaining property out of the house.

¶ 12    Chicago police officer Aury Pickens testified that around 4:30 a.m. on August 4, 2016, he was on patrol with his partner when they received a call that a burglar alarm had gone off in the detached garage at the address in question. When they arrived at the scene, Pickens heard the sound of a dog barking and at least one person's voice coming from inside the garage. Pickens and his partner announced their office and asked whoever was in the garage to come out. No one responded. After a couple of minutes, another officer who had arrived on the scene forced the garage's service door open. Defendant, whom Pickens identified in court, came out of the door with a dog. Defendant was placed in custody and taken to the police station.

¶ 13    Defendant made a motion for a directed finding, which the trial court denied.

¶ 14    Clarence Keith testified that he retired from being a Chicago police detective in 2008 and moved to Kentucky in 2011. According to Keith, prior to the issuance of the order of protection, defendant lived in the Chicago house. Keith testified that Lewis told him defendant's name was

"on the deed." He explained, "My father passed, and before my father passed, my father and my mother had [defendant's] name put on the deed, it was only my mother's name, my father's name, and his name. I didn't even know that until my mother had told me that."

¶ 15    At some point before May of 2016, Keith made some efforts to help Lewis sell the house. He stated that he had power of attorney. Just before the house was ready to go on the market, Suggs came to Chicago "and completely stopped everything." On cross-examination, Keith agreed that he was aware there came a point when defendant was not supposed to be at the house.

¶ 16    Defendant testified that he had been convicted of retail theft in 2008, 2011, and 2015. He stated that he had lived at the Chicago house since the "latter part of 2011," and had been there, checking on his mother, "every day before then." Defendant then testified regarding the issuance of the order of protection as follows:

"Q. After the order -- an order of protection was entered against you, is that fair to say?

A. Yes, sir.

Q. And that was on May 27 of 2016?

A. May 27 of 2016 is when the temporary order had elapsed, and I was in court on the 26th, yes, and then I did plead guilty to a violation.

Q. Okay. And after the plenary order of protection was issued, which last two years, where did you move?"

Defendant answered that he moved in with a friend, and that when he did so, he did not take any of his possessions other than his dog.

¶ 17    According to defendant, after the protection order was issued, he made four attempts to get his personal property, all pursuant to court orders. On the first attempt, defendant followed instructions and called the police, but they never showed up at the house, so he left. The second time, the police met defendant and rang the bell at the house, but no one answered. The third time, the judge told defendant to ask the police to escort him to the house, so defendant went to the station and asked for an escort. The police indicated they would meet him there. However, defendant waited at the house for four hours and the police never arrived. On the fourth attempt, defendant requested assistance from the police, and "the sergeant wrote off on it at the police station on the court order for [defendant] to go over there," but again, no one was home. Defendant testified that he was attempting to retrieve his nebulizer, which he needed to treat his asthma and chronic obstructive pulmonary disease, as he could not receive another nebulizer unless the one he already had was lost or stolen.

¶ 18    On August 4, 2016, defendant received a call from a neighbor, alerting him that his dog was at the Chicago house. When defendant went to get the dog, he noticed that the garage's service door was ajar. Defendant pushed the door open, saw his nebulizer, and decided to take the opportunity to retrieve it. While he was in the garage, the police arrived.

¶ 19    On cross-examination, defendant admitted that on August 4, 2016, he was aware the order of protection was in effect. When he went to retrieve his dog from the yard that morning, he did not check to see if anyone was in the house. He also did not call the police to ask for an officer to come over to see if everything was all right inside the garage, since he did not feel he needed to notify anyone that he was at the address. As far as defendant was concerned, he still "live[d]" at the house, even if he could not go there due to the order of protection. He stated, "But the order

didn't state – I'm just finding out a lot of things about that order of protection. I know I violated it – I didn't mean to, I didn't mean to plead guilty to the violation." Defendant stated that when the police arrived at the garage, they knocked, announced their office, and asked him to come outside. In response, he told them, "[M]y dog is here, hold on, I'm coming out," and then promptly exited the garage.

¶ 20    The trial court found defendant guilty of burglary and violating an order of protection. Defendant filed a motion for a new trial, which the trial court denied.

¶ 21    A presentence investigation (PSI) report was prepared. It indicated that defendant's criminal history included a conviction for retail theft in 2007, for which defendant received a sentence of two years of probation; a conviction for retail theft in 2008, for which he received a sentence of two years in prison; a conviction for retail theft in 2011, for which he received a sentence of 24 months of probation; and a conviction for theft in 2014, for which he received a sentence of one year in prison. The PSI report also listed a conviction on May 27, 2016, in case number "16DV0707801 Crim Trespass To Residence," for which defendant received a sentence of 12 months of conditional discharge.

¶ 22    At sentencing, the prosecutor referenced the PSI report in arguing that defendant's criminal history consisted of three felony retail thefts. The prosecutor further stated, "And, Judge, while page 3 of the PSI gives that 16-DV number for criminal trespass to residence, according to the information I have, Ms. Betty Lewis was the victim in that case as well. That took place at [the Chicago address]. I believe there was also an order – violation of an order of protection that was charged at that time as well."

¶ 23    The trial court stated that defendant was "going to be placed on 24 months of probation." The written sentencing order specified that that sentence was entered on the charge of burglary.

¶ 24    On appeal, defendant makes a two-pronged challenge to the sufficiency of the evidence. First, with regard to his conviction for burglary, he contends that the State failed to prove beyond a reasonable doubt that the crime he intended to commit when he entered the garage – a violation of an order of protection – was a felony, as opposed to a misdemeanor. As such, he asserts that the State failed to prove an element of burglary and that his conviction must be reversed. Second, with regard to the guilty finding for a felony violation of an order of protection, defendant contends that, based on the lack of evidence that he had a prior conviction for violating an order of protection, his "conviction" must be reduced to a Class A misdemeanor.

¶ 25    We first address defendant's conviction for burglary. When considering the sufficiency of the evidence, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In Illinois, "[a] person commits burglary when without authority he or she knowingly enters or without authority remains within a building *** with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2016)). Thus, the essential elements of burglary include the intent to commit either a felony or theft; the intent to commit a crime that is a misdemeanor will not sustain a burglary conviction. *People v. Matthews*, 44 Ill. App. 3d 342, 344 (1976). When prosecuting a burglary, the State must prove the defendant's felonious intent beyond a reasonable doubt. *People v. Maggette*, 195 Ill. 2d 336, 353 (2001).

¶ 26    Here, the felony defendant was alleged to have intended to commit when he entered the garage was a felony violation of an order of protection. In general, the violation of an order of protection is a Class A misdemeanor. 720 ILCS 5/12-3.4(d) (West 2016). However, violation of an order of protection is a Class 4 felony if the defendant has a prior conviction for any of a number of enumerated offenses. *Id.* As relevant here, the crime is a Class 4 felony if the defendant has a prior conviction for violation of an order of protection. *Id.*

¶ 27    Count 2 of the indictment alleged that defendant had been "previously convicted of the offense of violation of an order of protection, under case number 16DV0707801." However, the State presented no evidence at trial to prove this allegation. "In Illinois, the traditional method of proving a prior conviction is by the certified record of the prior conviction or an authenticated copy of the conviction, and proof of identity between the name on the record and the defendant on trial." *People v. White*, 311 Ill. App. 3d 374, 380 (2000). Alternatively, a defendant's admission or stipulation may serve as conclusive evidence of a prior felony. See *People v. Walker*, 211 Ill. 2d 317, 338 (2004). Here, the State did not introduce a certified copy of conviction or offer a stipulation.

¶ 28    We are mindful that when defense counsel asked defendant whether an order of protection was entered against him on May 27, 2016, defendant answered, "May 27 of 2016 is when the temporary order had elapsed, and I was in court on the 26th, yes, and then I did plead guilty to a violation." However, we agree with defendant that this ambiguous, "undeveloped testimony" does not constitute a conclusive legal statement or an admission. It is not clear from the statement what kind of "violation" defendant was referring to, or even what day he may have entered a plea. The PSI report does not reflect that defendant ever pled guilty to or was convicted of a violation of a

protection order. Rather, the PSI report indicates that on May 27, 2016, defendant was convicted of criminal trespass to residence in case number 16DV0707801. Although the prosecutor commented at sentencing that he "believe[d] there was also an order – violation of an order of protection that was charged at that time as well," we note that the prosecutor only referred to a charge, and did not state that defendant had pled guilty or had otherwise been convicted of violating an order of protection in that case.

¶ 29    In order to prove defendant guilty of burglary as charged in this case, the State was required to show that he had previously been convicted of violating an order of protection. This the State failed to do. Absent evidence that defendant had such a prior conviction, the State did not establish, beyond a reasonable doubt, that he entered the garage with the intent to commit felony violation of a protection order, as opposed to misdemeanor violation of a protection order. Felonious intent is an essential element of burglary. See *Maggette*, 195 Ill. 2d at 353; *Matthews*, 44 Ill. App. 3d at 344. Where proof of an essential element of an offense is lacking, we must reverse the conviction. *People v. Murdock*, 321 Ill. App. 3d 175, 177 (2001).

¶ 30    Having reversed defendant's conviction for burglary, we turn to defendant's contention that the guilty finding for violation of an order of protection must be reduced from a felony to a Class A misdemeanor.

¶ 31    This court's jurisdiction extends only to final judgments. *People v. Relerford*, 2017 IL 121094, ¶ 71. "[I]t is axiomatic that there is no final judgment in a criminal case until the imposition of sentence, and, in the absence of a final judgment, an appeal cannot be entertained." *People v. Flores*, 128 Ill. 2d 66, 95 (1989). However, as exemplified by our supreme court's decision in *People v. Dixon*, 91 Ill. 2d 346 (1982), this court may, in some cases, still have

jurisdiction even without a final judgment. In *Dixon*, the trial court incorrectly merged guilty findings on a defendant's less serious offenses into his convictions for two more serious offenses and imposed sentences only on the more serious offenses. *Id.* at 349. On appeal, this court reversed one of the defendant's sentenced convictions, affirmed the other sentenced conviction, and rejected the State's request for a remand to impose sentences on the less serious offenses. *Id.* Our supreme court reversed, holding that the appellate court was authorized to remand for the imposition of sentences on the previously merged guilty findings under the "anomalous" fact pattern presented. *Id.* at 353-54. While no final judgments were entered on the defendant's less serious offenses because the trial court did not impose sentences on them, all of the offenses "arose from a series of separate but closely related acts." *Id.* at 353. The *Dixon* court determined that the close relation of the acts, coupled with the fact that the unsentenced, unappealed offenses "had been intimately related to and 'dependent upon' " the sentenced offenses, authorized the appellate court to remand for sentencing. *Id.* at 353-54.

¶ 32    In *Relerford*, 2017 IL 121094, ¶¶ 74-76, our supreme court re-examined *Dixon* and clarified that its application should be narrow. First, the *Relerford* court remarked that "*Dixon* must be understood to be limited to the type of factual situation presented in that case," where the trial court had determined, albeit incorrectly, that sentences could not be imposed on the lesser offenses because they merged into the more serious, sentenced offenses. *Id.* ¶ 74. Second, our supreme court determined that a close reading of *Dixon* revealed "that, to the extent the appellate court had any jurisdiction to address the non-final convictions, that jurisdiction was limited to ordering remand for imposition of sentences on the lesser convictions." *Id.* ¶ 75. Thus, under *Releford*, if

appellate jurisdiction exists to review an unsentenced guilty finding, that jurisdiction is limited only to remanding the case for the imposition of a sentence. *Id.*

¶ 33    Here, as in *Dixon*, defendant's conviction on Count 1, burglary, and his unsentenced guilty finding on Count 2, violation of an order of protection, are "intimately related" to each other, as they arose from the same act. Further, as in *Dixon*, there is a reason the trial court did not sentence defendant on Count 2: it had merged that offense into Count 1. As a result, we find that while we lack jurisdiction to review the merits of whether the guilty finding on Count 2 should be reduced from a felony to a misdemeanor, we do have jurisdiction to remand for sentencing on that count. See *People v. Beck*, 2019 IL App (1st) 161626, ¶ 36 (where the trial court had merged sentenced and unsentenced counts, the appellate court had jurisdiction to remand for sentencing on unsentenced counts); *People v. Goodwin*, 2018 IL App (1st) 152045, ¶¶ 62-63 (where the trial court had merged two counts, the appellate court lacked jurisdiction to review the merits of the unsentenced guilty finding, but exercised its limited jurisdiction to remand for imposition of sentence on that count); contra *Relerford*, 2017 IL 121094, ¶ 74 (where the record revealed no explanation or reason for the trial court's failure to sentence the defendant on three of four counts, the appellate court lacked jurisdiction to remand for sentencing). Accordingly, we remand to the trial court to impose a sentence on Count 2.

¶ 34    For the reasons explained above, we reverse defendant's conviction for burglary because the State failed to prove an essential element of the crime beyond a reasonable doubt. We lack jurisdiction to address the merits of defendant's appeal of the guilty finding on Count 2, violation of an order of protection, but exercise our limited jurisdiction to remand to the trial court to impose a sentence on that count. See *Goodwin*, 2018 IL App (1st) 152045, ¶ 65.

¶ 35     Reversed and remanded with directions.